UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ROBERT BARD                                                          CV

                                        Plaintiff,

           -against-                                       **COMPLAINT**

OMABUILD CORPORATION AND SIXTY                    **JURY TRIAL REQUESTED**
HOSPITALITY LLC

                                        Defendants.
----------------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff Robert Bard (hereafter referred to as "Plaintiff"), by counsel, The Parker Law Group P.C., as and for the Complaint in this action against Defendants Omabuild Corporation and Sixty Hospitality LLC (together referred to as "Defendants"), hereby alleges as follows:

## <u>NATURE OF THE CLAIMS</u>

1.     This lawsuit opposes pervasive, ongoing, and inexcusable disability discrimination and negligence by the Defendants.  In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, nominal damages, and attorney's fees, costs, and expenses to redress Defendants' unlawful disability discrimination and negligence against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations; the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"); the New York State Civil Rights Law, § 40 *et. seq.*; and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York ("Administrative Code"").

As explained more fully below, Defendants own, lease, lease to, operate, and control a place of public accommodation that violates the above-mentioned laws. Plaintiff alleges claims for Negligence inclusive of negligent hiring, training, supervising, and retaining. Defendants are liable for the acts and omissions of their employees and agents for the conduct alleged herein.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination and negligence alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is in this district.

## PARTIES

4.      Defendant Omabuild Corporation owns the property located at 14 East 60th Street in New York County, New York (hereinafter referred to as "14 East 60th Street").

5.      At all relevant times, defendant Sixty Hospitality LLC leases property located at 14 East 60th Street from the defendant Omabuild Corporation.

2

6.      At all relevant times, defendant Sixty Hospitality LLC has and continues to operate an upscale Greek seafood restaurant at 14 East 60th Street doing business as Avra Madison (hereinafter referred to as the "Avra Madison" premises).

7.      Each defendant is licensed to and does business in New York State.

8.      Upon information and belief, Omabuild Corporation and Sixty Hospitality LLC have a written lease agreement.

9.      At all times relevant to this action, Plaintiff Dr. Robert Bard has been and remains currently a resident of New York, New York.

10.      At all times relevant to this action, Dr. Robert Bard has been and remains a person who uses a walker for mobility.  Plaintiff has medical conditions that inhibit walking and restrict body motion range and movement.

11.      Dr. Robert Bard is a disabled US Air Force veteran, having served in military hospitals in Thailand and Laos in the early 1970's.

12.      Dr. Robert Bard is internationally recognized in the field of 3D DOPPLER ULTRASOUND IMAGING to detect cancers (in organs including the breast, prostate, skin, thyroid, melanoma and other areas). As a certified diagnostic radiologist, Dr. Bard evolved his practice to pursue non-invasive 3D imaging with ultrasound, MRI and laser technologies.

13.      The Avra Madison restaurant is located two blocks away from Dr. Bard's East 60th Street medical practice.

14.      On  December 4, 2024, Dr. Bard and his wife attended an important clinical meeting and dinner at Avra Madison with other doctors.

15.      Dr. Bard arrived at the sole public entrance to Avra Madison using his

walker for mobility.

16.    The public entrance Avra Madison has several steps, but no ramp or platform lift for a person with a mobility disability to gain entrance.

17.    Nor does the public entrance Avra Madison have any signage to indicate the location of an accessible entrance.

18.    Dr. Bard him could not independently travel up the steps with his walker.

19.    Leaving his walker at the bottom of the steps, Dr. Bard traveled up the steps with great difficulty.

20.    Another person carried Dr. Bard's walker up the steps and placed it next to him.

21.    Dr. Bard then used his walker to travel to his table and then participated in the clinical meeting.

22.    Dr. Bard greatly enjoyed his meal at Avra Madison and would like to return.

23.    At the end of this meeting and dinner, Dr. Bard asked a restaurant employee if there was a wheelchair accessible route to exit the restaurant.

24.    Dr. Bard was advised that he and his wife needed to be chaperoned by a restaurant employee who would take him through a wheelchair accessible path to exit.

25.    The restaurant employee took Dr. Bard and his wife to an elevator located on the main floor of the restaurant.

26.    Dr. Bard and his wife followed the restaurant employee into the elevator where they traveled down to a lower level where they exited out of the elevator into a

hallway.

27.     The lower level contains the kitchen for Avra Madison.

28.     Once on this lower level, the restaurant employee instructed Dr. Bard and his wife to wait in a specific location while the restaurant employee walked to open a locked exit door.

29.     The specific location where Dr. Bard and his wife were instructed to remain was located in a narrow hallway adjacent to a large metal door leading into the kitchen.

30.     This large metal door opened outward directly into the specific location where the restaurant employee instructed Dr. Bard to remain stationary.

31.     Dr. Bard and his wife relied on the restaurant employee to provide a safe and accessible path of travel to exit the restaurant.

32.     This restaurant employee needlessly endangered Dr. Bard by placing him in harm's way.

33.     This restaurant employee never warned Dr. Bard to watch out for the door swinging outward toward him.

34.     This restaurant employee never went into the kitchen to instruct the employees not to open the metal door while Dr. Bard was waiting.

35.     While Dr. Bard waited with his walker in the specific location, another restaurant employee aggressively pushed the metal door outward, which hit Dr. Bard with great force.

36.     This other restaurant employee threw the metal door open from the kitchen side of the door.

37.     The heavy metal door slammed into Dr. Bard's body.

38.     Dr. Bard's body quickly fell backward onto the hard concrete floor.

39.     Dr. Bard's head and buttocks violently hit the concrete floor.

40.     This other restaurant employee never announced that he was coming through the metal door, let alone warn Dr. Bard to watch out for a fast-swinging door.

41.     Dr. Bard had no advance notice to try to protect himself.

42.     Dr. Bard had no advance notice from which he could tell the other restaurant employee not to push the door into him.

43.     Dr. Bard suffered and continues to suffer painful physical injuries to his body as a result.

44.     Thereafter Dr. Bard received treatment from an orthopedic surgeon who recommended an MRI.  The MRI revealed edema in the sacral five (S5) bone, which finding is documented in Dr. Bard's medical records, including reports from the orthopedic surgeon and the MRI results.

45.     Dr. Bard suffered and continues to suffer from pain in his sacrum.

46.     Because of this injury, Dr. Bard's mobility has been severely limited with his balance steadily worsening.  For example, this injury has doubled the amount of time that it takes for Dr. Bard to travel when using his walker for mobility.

47.     Dr. Bard's ability to participate in daily life activities has been and continues to be adversely impacted by this injury.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

48.     Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Avra Madison premises

located at 14 East 60th Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

49.    The Avra Madison premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity and its operations affect commerce.

50.    Numerous architectural barriers exist at the Avra Madison premises that prevent and/or restrict access to Plaintiff, a person with a disability, which includes, but are not limited to, architectural barriers at the paths of travel.

51.    Upon information and belief, at some time after January 1992, alterations were made to 14 East 60th Street, including areas adjacent and/or attached to 14 East 60th Street.

52.    Upon information and belief, at some time after January 1992, alterations were made to the Avra Madison premises, and to areas of 14 East 60th Street related to the Avra Madison premises.

53.    The services, features, elements and spaces of the Avra Madison premises are not readily accessible to, or usable by Plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or the revised final regulations implementing Title III of the ADA adopted by the United States Department

of Justice in 2010 as the 2010 Standards for Accessible Design (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

54.     Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and complete access to all of the areas of the Avra Madison premises that are open and available to the public.

55.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, and/or the Building Code of the City of New York ("BCCNY").

56.     An entrance with steps is no different than a sign informing people with disabilities to "keep out." *See* 134 Cong. Rec. S10,454, 10,491 (1988) (statement of Sen. Simon) (noting that the architectural barriers are like "Keep Out" signs to people with disabilities).

57.     Barriers to access that Plaintiff experienced, encountered and/or which deter Plaintiff from patronizing the Avra Madison premises as well as architectural barriers that exist include, but are not limited to, the following:

I.   Defendants do not provide an accessible public entrance.  See 28 C.F.R. § 36.304(c); and 1991 Standards §§ 4.1.1(1); 4.1.3(8), 4.32, and 4.14; and 2010 Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY §§ 1101.2, 1104.1, 1103.1.

II.  The primary entrance to defendants' public accommodation is not accessible.  See Administrative Code §§ 27-292.5(a) and 27-357(d).

III. Defendants fail to provide an accessible route to the primary entrance from the sidewalk and/or street.  See Administrative Code § 27-292.5(b).

IV.  Defendants do not provide an accessible route from public transportation stops, accessible parking, public streets or sidewalks to the building entrance that coincides with the general circulation path used by patrons to the public accommodation thereby relegating plaintiff to a "second class citizen" entrance and exit.  See 1991 Standards §§ 4.3.2(1), 4.1.2(1), 4.1.1(1) and 4.14.1; 2010 Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY § 1104.5.

V.  At the inaccessible public entrance, Defendants do not provide and display the International Symbol of Accessibility with the required information indicating the location of a designated and nearest accessible entrance.  See 1991 Standards §§ 4.1.6(l)(h), 4.1.3(8)(d), 4.30.1, 4.30.7, 4.30.3 and 4.30.6; 2010 Standards §§ 216.6, 703.7.2.1, 703.5; and Administrative Code § 27-292.18.

VI.  Defendants have an inaccessible public entrance and fail to provide and display the International Symbol of Accessibility at a designated accessible entrance.  See 1991 Standards §§ 4.1.2(7)(c), 4.1.6(l)(h), 4.1.3(8)(d), 4.30.1, 4.30.7, 4.30.3 and 4.30.6; 2010 Standards §§ 216.6, 703.7.2.1, 703.5; and Administrative Code § 27-292.18.

VII.  Defendants fail to provide accessible entrances in a number at least equivalent to the number of exits required by the New York Building and Fire Codes.  See 1991 Standards §§ 4.1.3(8)(a)(ii), 4.1.3(9), 4.3.10; 2010 Standards § 207.1; and Administrative Code §§ 27-354 and 27-365.

VIII.  Defendants fail to provide that at least 50% and/or 60% of all its public entrances are accessible.  See 1991 Standards § 4.1.3.8(a)(i); and 2010 Standards §§ 206.4.1, and 404.

IX.  Defendants fail to provide that an accessible route from the primary entrance to the entire interior is equivalent to the route afforded to the non-disabled.  See Administrative Code § 27-292.5(b).

X.  The property owner defendant failed to provide an accessible entrance to the tenant.  See 1991 Standards § 4.1.3(a)(iii); 2010 Standards § 206.4.5, 404; Administrative Code § 27-362; and BCCNY § 1105.1.6.

XI.  Defendants fail to provide that no changes in level exist inside the required minimum maneuvering clearance at the ground space in front of the public entrance door.  See 1991 Standards§§ 4.37, 4.13.6, 4.3.8, 4.5.2; and 2010 Standards §§ 305.2, 302, 304.2, 404.2.4.4.

XII.  Defendants do not provide an accessible public exit/entrance as the designated accessible path of travel locked and/or obstructed.  See 28 C.F.R. § 36.304(c); 1991 Standards §§ 4.3.2, 4.1.1(1); 4.1.3(8), 4.14; 2010 Standards § 404.1; BCCNY § 1105.1(3); and Administrative Code § 27-371(j).

XIII.   Defendants unlawfully utilize a service entrance as the designated accessible exit/entrance.  See 1991 Standards §§ 4.1.3(8) and 4.14.2; and 2010 Standards § 206.4.

XIV.   Defendants fail to provide accessible vertical access to the floor above the ground public sidewalk floor.  42 U.S.C. § 12183(b); and 28 C.F.R. §§ 36.404(a) and 36.401(d)(2).

XV.   Defendants' door requires more than five pounds of force to open.  See 1991 Standards § 4.1.3(7), 4.13.11; and 2010 Standards §§ 206.5.2, 404.2.9.

XVI.   Defendants fail to provide the minimum maneuvering clearance of level and clear space adjacent to the handle side of the non-automatic door exit/entrance.  See 1991 Standards §§ 4.1.3(7), 4.13.6; and 2010 Standards §§ 206.5.2, 404.2.4.1, 305.3, 404.3.

58.   The remediation necessary to provide an ADA compliant wheelchair accessible entrance is known, architecturally possible, and financially achievable for the Defendants.  Remediation includes installation of a permanent exterior wheelchair accessible ramp or the installation of a lift.

59.   Upon information and belief, a full inspection of the Avra Madison premises will reveal the existence of other barriers to access.

60.   As required by the ADA (remedial civil rights legislation) to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Avra Madison premises to catalogue and cure all the areas of non-compliance with the ADA.  Notice is therefore given that Plaintiff intends to amend the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

61.   Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

62.    Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor have Defendants made or provided accommodations or modifications for persons with disabilities.

63.    Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within the Avra Madison premises continue to exist and deter Plaintiff.

64.    Plaintiff lives and works near and thus, frequently travels to the area where the Avra Madison restaurant is located.

65.    Plaintiff attends numerous clinical meetings at restaurants.

66.    Because the Avra Madison restaurant is so close to Dr. Bard's home and work, he desires to be able to patronize him patronize the after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

## FIRST CAUSE OF ACTION
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

67.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

68.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, Plaintiff uses a walker for mobility.

69.    The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation. 28 C.F.R. 36.201(b).

11

70.     Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract (i.e., lease agreement).  28 C.F.R. 36.201(b).

71.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability.  Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

72.     By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

73.     Defendants have discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

74.     The Avra Madison premises are not fully accessible and fail to provide an integrated and equal setting for people with disabilities, in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

75.     Defendants failed to make alterations accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

76.     The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

77.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make Defendants' place of public accommodation fully accessible.

78.     By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

79.     In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

80.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

81.     Defendants have and continue to discriminate against Plaintiff in violation of the ADA by failing to maintain and/or create a wheelchair accessible public accommodation.

<u>**SECOND CAUSE OF ACTION**</u>
**(VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)**

82.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

83.     Plaintiff has various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life

activities of both walking and body motion range.  Plaintiff therefore has a disability within the meaning of the Executive Law § 296(21).

84.    In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed".  See Executive Law § 300 [effective date: August 12, 2019].

85.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

86.    Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

87.    Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the Defendants has aided and abetted others in committing disability discrimination.

88.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

89.     In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

90.     It would be readily achievable to make Defendants' place of public accommodation fully accessible.

91.     It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

92.     As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, embarrassment, stress, and anxiety.

93.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

<u>**THIRD CAUSE OF ACTION**</u>
**(VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)**

94.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

95.     Plaintiff has various medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

96.     Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative

Code § 8-107(4)).  Each of the Defendants has aided and abetted others in committing disability discrimination.

97.     Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

98.     Defendants have discriminated and continue to discriminate against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating, and/or maintaining an inaccessible commercial facility/space.

99.     Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

100.    Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107(4)).

101.    In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

102.    Administrative Code §§ 19-152 and 7-210 imposes a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public

sidewalk.  As a result, Omabuild Corporation continuously controlled, managed, and operated the public sidewalk abutting 14 East 60th Street, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

103.    Omabuild Corporation's failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

104.    Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

105.    Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on people with disabilities (including Plaintiff).

106.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

107.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including, but not limited to, humiliation, stress, and embarrassment.

108.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

109.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

110.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

111.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

112.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

113.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

114.    Defendants discriminated against Plaintiff pursuant to New York State Executive Law.

18

115.    Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each violation.

116.    Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## FIFTH CAUSE OF ACTION
### (NEGLIGENCE)

117.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

118.    Defendants are vicariously liable for the negligent acts of their employees and agents described herein as those acts were committed within the scope of each employee's employment.

119.    Defendants negligently hired, trained, supervised and/or retained their employees and agents, which Negligence caused Plaintiff's injuries.

120.    Defendants negligently placed their employees and agents in a position to cause foreseeable harm, which would not have occurred had Defendants taken reasonable care in the hiring, training, and supervision of their employees and agents.

121.    Defendants failed to take reasonable care in the hiring, training, supervising and/or retaining of their employees and agents.

122.    As a result of the foregoing Plaintiff suffered injuries, in an amount to be determined at trial, which were caused by the Negligence of Defendants in their ownership, operation, management, maintenance, control, hiring, supervision, retaining, and training of employees and agents.

123.    Plaintiff's injuries were due solely and wholly to the reckless, careless and negligent manner of the defendants without Plaintiff in any way contributing thereto.

19

124.    That by reason of the foregoing, Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, and sustained severe shock and mental anguish, great physical pain and emotional upset, injuries for which Plaintiff received medical treatment, and for which plaintiff incurred medical expenses and which injuries are of a severe and permanent nature.

125.    That by reason of the foregoing and the negligence of the Defendants, Plaintiff sustained serious, severe and permanent injuries to his head, neck, back, limbs and body, still suffer and will continue to suffer for some time, great physical and mental pain and serious bodily injury; became sick, sore, lame and disabled for so remained for a considerable length of time.

126.    As a direct result of Defendants' Negligence, Plaintiff has suffered and continues to suffer emotional distress damages in an amount to be determined at trial.

127.    Defendants negligently designed, constructed, operated, repaired, and maintained their place of public accommodation located at 14 East 60th Street in a manner that has rendered their place of public accommodation unsafe to the disabled Plaintiff.

128.    At all relevant times, Defendants, who hold their property open to the public, have had a duty to patrons such as Plaintiff to design, construct, operate, repair, and maintain their place of public accommodation located at 14 East 60th Street in a reasonably safe condition.

129.    Defendants breached their duty by negligently designing, constructing, operating, repairing, and maintaining their place of public accommodation located at 14

East 60th Street in a manner that has unreasonably endangered the Plaintiff's physical safety and caused bodily injury to Plaintiff.

130.    Defendants' failure to design, construct, operate, repair, and maintain their place of public accommodation located at 14 East 60th Street in a manner that is safe to the disabled Plaintiff has proximately caused Plaintiff to suffer bodily injury.

131.    Defendants have had actual and constructive notice that their place of public accommodation located at 14 East 60th Street is not safe for people with disabilities.

132.    As a direct result of Defendants' negligence, Plaintiff has suffered and continues to suffer a bodily injury in an amount to be determined at trial.

## INJUNCTIVE RELIEF

133.    Plaintiff will continue to experience unlawful discrimination because of Defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

134.    Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

135.    Injunctive relief is further necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.  Issue a permanent injunction ordering **Defendants to close and cease all business** until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, NYSHRL and NYCHRL, including, but not limited to, the violations set forth above;

C.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not recur;

D.  Award Plaintiff compensatory damages and nominal damages because of Defendants' Negligence and violations of the NYSHRL and the NYCHRL;

E.  Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the NYCHRL;

F.  Award Plaintiff the monetary penalties for each violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL, and the ADA; and

H.  For such other and further relief, at law or in equity, to which Plaintiff

may be justly entitled.

Dated: March 21, 2025
        New York, New York

Respectfully submitted,

**THE PARKER LAW GROUP P.C.**

By:_____
        Glen H. Parker, Esq.
        Attorneys for Plaintiff
        28 Valley Road, Suite 1
        Montclair, New Jersey 07042
        Telephone: (347) 292-9042
        Email: ghp@parkerlawusa.com